## Case No. 10,892.

PECK et ux. v. NEIL.

[3 McLean, 22.] 1

Circuit Court, D. Ohio. July Term, 1842.

CARRIERS OF PASSENGERS—STAGE PROPRIETORS—SKILL AND PRUDENCE OF DRIVERS—CHARACTER OF EQUIPMENT—COLLISION WITH ANOTHER STAGE—EXEMPLARY DAMAGES.

1. A stage proprietor is responsible for the skill and prudence of his drivers.
[Cited in Farish v. Reigle, 11 Grat. 705.]

2. He is also bound to procure good stages, harness, and well broke horses. If, for want of such preparation, an injury is done to a passenger in the stage, the proprietor is responsible.

1 [Reported by Hon. John McLean, Circuit Justice.]

Or if the drivers do not act with skill and prudence in driving the stage.
[Cited in brief in Andrews v. Capitol N. O. & S. W. R. Co., 29 D. C. 139.]

3. Although the accident may have occurred through the recklessness of the driver of another stage, who may be liable, and also his employers—yet if the driver of the stage to which the accident occurred be in any respect wanting, in the exercise of skill and prudence, his principals are liable.
[Cited in brief in Lake v. Milliken, 62 Me. 241. Cited in Ricker v. Freeman, 50 N. H. 433; Sanderson v. Frazier, 8 Colo. 79, 5 Pac. 633; Board of Com'rs of Sullivan Co. v. Sisson, 2 Ind. App. 319, 28 N. E. 374.]

4. Damages will be assessed for the injury received.

5. Where there has been great recklessness by the driver, exemplary damages should be given.
[Cited in Brown v. Evans, 17 Fed. 914.]

[This was an action at law by William L. Peck and wife against Neil, to recover damages for injury sustained by Mrs. Peck.]

Goddard & Vinton, for plaintiffs.
Ewing, Swan & Stanbury, for defendant.

OPINION OF THE COURT. This action is brought for an injury done the plaintiff's wife, by the overturning of the stage through the carelessness of the driver, the defendant being the proprietor. The plea of not guilty was filed by the defendant. In the summer of 1840, there were two stage lines on the route between Marietta and Zanesville, Ohio. One carried the mail. Neil's line was run in opposition to the mail line. On the 2d of August, Peck and wife took Neil's line of stages at Zanesville, for Marietta. The stages left Zanesville at about the same hour. The accommodation sometimes passed the mail stage whilst retained at a postoffice. The horses in both lines were driven rapidly, often at their full speed, against the remonstrances of the passengers in Neil's line. When within about six miles of Marietta, the mail stage overtook the other about a quarter of a mile before they reached a hill; the driver of the mail requested the other driver to give half the road and he would pass him. The driver answered, that he was not so anxious for a race as that. The mail driver then turned his horses to the right, whipped them, hallooed, and this started the horses in the other stage, which had been moving rather slowly. The horses in the accommodation stage did not go fast, but jumped; the driver struck the off-wheel horse, in order, as he alleged, to bring him nearer the tongue, and give half the road to the other stage. The driver says he pressed the lever, and Donaldson, who sat with him, raised the reins, and, with the driver, pulled them. The other coach inclined to the left, until the wheel of the mail coach locked in the fore-wheel of the other stage, broke its double-tree, and threw the stage and horses over a precipice, which severely injured Mrs.

Peck. Several physicians state that her health, by this injury, has been permanently impaired, her arm disabled, and several of them say that the injury has made her life uncomfortable, and that it will, in all probability, shorten her life. There was evidence conducing to show a concerted arrangement between the two drivers in regard to racing, and it was fully proved that the horses in both stages were driven over the greater part of the route in a most rapid and reckless manner, against the remonstrance of the plaintiff, Peck. One of the passengers, occasionally, rather encouraged the driver.

On the evidence, THE COURT charged the jury, that to exonerate the defendant from liability, he must show that every precaution was used by his agent to prevent the injury which occurred; that every omission of duty by the driver, which in any degree increased the risk of the passengers, subjected the defendant to damages for an injury done them; that although the upsetting of the stage may have been caused immediately by the driver of the mail stage, for which he and his employers were liable to damages, still if Neil's driver, under the circumstances, did not use all the means which a skilful and prudent driver could and would have used to prevent the injury done, the defendant is liable. Every person who establishes a line of stages for the conveyance of passengers, and who holds out inducements to persons to travel in his stages, for which a compensation is charged, is bound to have skilful and prudent drivers, good coaches and harness, and well broke horses; and the utmost skill and prudence of the driver, under the circumstances, must be exercised to avoid accidents. This, and nothing short of this, will exonerate the defendant from liability to damages in this case. If the driver of the defendant's stage did not say or do any thing to provoke a reckless competition with the driver of the mail stage, and if, on the contrary, he evidently sought to avoid such competition, and if, when the driver of the mail stage attempted to pass him, he did all that could be reasonably expected from a skilful and prudent driver to prevent the upsetting of his stage, the defendant is not liable, however serious the injury may have been to the wife of the plaintiff. The culpability and utter recklessness of the driver of the mail stage are clear, and whatever may be the result of this case, he and his principals should be made to feel that they cannot, with impunity, sport with the lives of passengers in their own or an opposition line.

The damages are to be measured mainly by the injury done. Where a case is extremely aggravated by the recklessness of the driver, a jury will feel authorised to assess exemplary damages, to prevent such conduct in future. But, where these circumstances do not exist, and the driver, though somewhat in fault, has generally conducted himself well, the jury will feel inclined to give no more damages than may repair the injury received. These are to be ascertained by the expenses incurred, the loss of time and the suffering which has been endured. The want of skill of the driver may be shown, at the time of the accident, or at any prior time; but his good or bad conduct can only be looked at, at the time the accident occurred, or as connected with the accident. The enterprise and great efficiency of the defendant, as a stage proprietor, is known and acknowledged. His exertions have done much to facilitate travelling throughout Ohio and other states. But, still, this does not excuse him, where one of his agents has been the means of inflicting an injury upon a passenger in the stage.

The jury returned a verdict for the plaintiffs, and assessed their damages at five thousand dollars. Judgment was entered on the verdict.

[For an action brought by William L. Peck to recover damages for injury personally sustained in the same accident, see Case No. 10,-893.]