Willis E. PRESSLEY, Appellant,

v.

Chester O. HOLLEY et al., Appellees.

No. 17486.

Court of Civil Appeals of Texas,
Fort Worth.

March 22, 1974.

Rehearing Denied April 19, 1974.

Brown, Crowley, Simon & Peebles, and
M. Hendricks Brown, Fort Worth, for
appellant.

Rex McEntire, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

This was a suit for damages for personal injuries. Following a trial by jury, the plaintiffs, Chester O. Holley and Sherry Goolsby, were awarded a judgment for damages against the defendant, Willis E. Pressley, and this appeal is by the defendant from that decree.

Upon the occasion in question a car being driven by the defendant, Pressley, hit a curb, struck a light post and then turned over, causing personal injuries to the two plaintiffs who were also occupants of the car.

The jury verdict established that upon the occasion in question the defendant, Pressley, was guilty of ordinary negligence which proximately caused the occurrence in question. The jury also found in answer to Issues Nos. 3 and 4 that at the time of the wreck neither plaintiff was riding in the car as a guest of Pressley.

We affirm.

In Pressley's Point of Error No. 1 he contends that the trial court erred in overruling his motion for instructed verdict and in overruling his motion for judgment notwithstanding the verdict.

We overrule this point of error.

Defendant's motion for judgment notwithstanding the verdict and his motion for instructed verdict were both based on his contention that the undisputed evidence showed that both plaintiffs were riding as Pressley's guests in the car he was driving at the time in question. The jury found that neither of them were guests.

Defendant's motion for judgment non obstante veredicto would have been properly granted only if he was entitled to an instructed verdict. See Rule 301, Texas Rules of Civil Procedure.

In deciding whether the trial court's action in overruling Pressley's motion for judgment notwithstanding the verdict was proper, certain rules are called into play that govern this Court in making that determination. We will next set out those rules.

■ The trial court should deny a motion for a judgment notwithstanding the verdict if there is "any evidence" of probative force from which reasonable minds might come to the conclusion that the jury came to. In such an instance there is "some evidence" to support the jury finding and it is there the duty of the trial judge to enter judgment in keeping with that finding. The fact that there is some evidence to the contrary is immaterial. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79 (1956) and 303 S.W.2d 359 (1957); and Brunson v. Brunson, 502 S.W.2d 578 (Fort Worth, Tex. Civ.App., 1973, no writ hist.).

■ Also, this Court in deciding whether such a motion for judgment notwithstanding the verdict should have been granted by the trial court, may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence that would lead to a contrary result. See Biggers v. Continental Bus System, supra; Brunson v. Brunson, supra; and Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962).

This wreck occurred on or about December 17, 1969. The Texas Guest Statute, Art. 6701b, Vernon's Ann.Civ.St., on that date read as follows:

"Section 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or

operator, or caused by his heedlessness or his reckless disregard of the rights of others."

We will here set out the substance of the testimony given at the trial bearing on the question of whether the two plaintiffs were guests upon the occasion in question. There was testimony that the plaintiff, Sherry Goolsby, had known a man named Ray Horrelleck for years; her family had for a long time traded with him at his service station; she also traded with him off and on over the years; the plaintiff, Holley, had met Horrelleck who had been trying to employ a mechanic in his filling station business; the defendant, Pressley, testified that Holley was the best mechanic that he had ever known; Horrelleck had tried to hire Holley as a mechanic and Holley had left the impression with Horrelleck that he might go to work for Horrelleck; the defendant, Pressley, and the plaintiff, Holley, were both working at the same service station; Holley was the mechanic there; Pressley had learned that Horrelleck had about fifty secondhand auto tires for sale; Pressley went by to see the tires and he figured that his station was in a better area for marketing secondhand tires than Horrelleck's station was in, so he called the latter in order to try to work out a deal with him on the tires; Pressley, over the phone, had offered to take the tires and sell them and split the money with Horrelleck 50–50; Horrelleck had offered to let him sell the tires and split the proceeds ⅔rds to him and ⅓rd to Pressley; they had been unable to reach an agreement; Pressley had found out that Horrelleck had tried to hire his mechanic, Holley, and made an agreement with Horrelleck to meet him at 10:00 P.M. on the night of the wreck at a designated place and he agreed to bring Holley to this meeting with him; the purpose of the meeting was for Pressley to try to consummate the tire transaction with Horrelleck, so that Pressley could make some money out of selling the tires; Pressley went to Holley and asked him to go along to the meeting because he believed he could get a better deal on the tires if Holley went along than he could if he went alone; Holley told Pressley he did not want to go because he was really tired and because he had some shopping to do; Holley then shopped about thirty minutes and went home and went to bed; later Pressley awakened Holley to go with him to see Horrelleck; Holley told him again he was too tired to go and did not want to go; Pressley told Holley that Sherry Goolsby had known Horrelleck for a long time and that she was also going along and he wanted Holley to go too, because he thought Holley could help influence Horrelleck into letting Pressley have the tires at the right price; when Pressley insisted that he go for this purpose Holley got up, put on his clothes and went on the trip to meet with Horrelleck; when at first Holley would not go along, Pressley, knowing that Sherry Goolsby knew Horrelleck, asked her to go along in an attempt to influence Horrelleck; then later Pressley succeeded in persuading Holley to go, so all three were en route to meet Horrelleck when the wreck occurred; and Sherry Goolsby did not want to go, either, but finally agreed to go because Pressley felt her presence would help influence Horrelleck because Horrelleck had known her so long.

On three different occasions during the trial the defendant, Pressley, testified that he knew Holley's presence at the meeting with Horrelleck would influence Horrelleck.

Pressley also testified that he knew what tangible meant and that money is tangible and that the material tangible benefit he expected to receive by reason of the presence of the two plaintiffs at the meeting was money. He expected to make money out of selling the tires, if he was successful in making the deal on the tires that he wanted.

In the court's charge in connection with Issues Nos. 3 and 4 the court gave the following instruction: " 'Guest' means one who rides in another's vehicle through vol-

untary hospitality of the driver without payment or benefit of a tangible nature for such transportation. Such benefit of a tangible nature, if any, must have been the motivating cause for furnishing the transportation. Answer 'He was not riding as a guest.' or 'He was riding as a guest.'"

The jury found that neither of the plaintiffs were Pressley's guests on the occasion in question.

The case of Schafer v. Stevens, 352 S. W.2d 471 (Dallas, Tex.Civ.App., 1961, no writ hist.) is somewhat similar to this one. The purpose of the trip involved there that the plaintiff and defendant were on when the wreck occurred was for the driver of the car to interest the plaintiff, occupant, and his corporation in a mining venture. The following is from the opinion in that case at page 478: "Appellant argues that in order to take the case out of the guest statute there must have been a tangible benefit which flowed to appellant. We agree. *But the tangible benefit need not have been the actual payment of money by Stevens to Schafer; nor need their business trip have resulted in a consummated deal.* If Schafer's motive both in the business discussion and the subsequent entertainment of Stevens as a prospective customer was to obtain a contract from Tex-Mex Corporation, which contract would net Schafer a money profit, we think the case is not governed by the guest statute." (Emphasis ours.)

That court held that the plaintiff was not the driver's guest, but was a business invitee in the driver's car where the driver's motive in the business discussion and later entertainment of plaintiff as a prospective customer was to obtain a contract that would net the driver a money profit.

In Elkins v. Foster, 101 S.W.2d 294 (Amarillo, Tex.Civ.App., 1936, writ dism.), the plaintiff, Foster, was the editor of a leading newspaper in Houston and was a man of considerable influence. The defendant, Elkins, was his friend and barber. Elkins had a brother who was a postmaster and a new administration was about to take over in Washington. Elkins had co-signed a note with his brother, the postmaster, and the latter's finances were in bad shape. Elkins sought to have Foster use his influence to help his brother keep the postmaster job when the new administration took over. Elkins gave Foster a ride into town so he could talk to him about the progress he was making in trying to keep the postmaster's job for Elkins' brother. On this ride into town there was a wreck and Foster was hurt. He sued Elkins for damages. Elkins had enlisted Foster's help to use his influence to aid his brother. The brother did get to hold on to the job for one year after his term ended. During that year the brother was able to pay off his one-half of the note he and his brother, the defendant, had co-signed. *Elkins, the defendant driver, admitted that Foster's efforts were of financial assistance to him.* The court there held that under those facts Foster was not Elkins' guest on this trip and that Elkins was therefore liable on a mere showing of ordinary negligence.

The case of Haney v. Takakura, 2 Cal. App.2d 1, 37 P.2d 170, 38 P.2d 160 (1934) is similar to this. The facts were there undisputed. Both parties testified to the same facts. Takakura was familiar with the orange market. The defendant, Haney, had requested the plaintiff, Takakura, to accompany him to Oakland for the purpose of assisting him in marketing to the best possible advantage 2,000 boxes of oranges that defendant then owned and wanted to market. Plaintiff agreed to go and en route a wreck occurred and plaintiff was hurt. He sued Haney for his damages. The court held that the plaintiff was not a guest because the service he was rendering was a benefit to the driver and was compensation for the ride.

The following is from the opinion in McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909 (1937), at pp. 911–912: "Compensation has been deemed made: . . . When the plaintiff accepted the ride at the behest

of the driver *to assist the latter* in arriving at his destination or *fulfilling the object of the journey.*" (Emphasis ours.)

In Lyttle v. Monto, 248 Mass. 340, 142 N.E. 795 (1924), the defendant driver asked a little boy the direction to a paint store and when the driver could not understand what the boy said, he told the boy to jump on the truck and show him. The boy did and rode and directed the driver to the paint shop which was a quarter of a mile away. The court said that as a matter of law the relationship between the driver and the boy during the ride to the paint shop was one where the boy was legally entitled to the exercise of reasonable care on the part of the driver. The boy was not a guest during that ride.

There is a comment on the Texas Automobile Guest Statute in 14 Southwestern Law Journal, p. 72. At page 73 of that article it is said: "Generally, a guest may be defined as the recipient of the voluntary hospitality of the driver or owner. In contrast, a 'passenger' is one who makes payment for his transportation by conferring a benefit of a material or pecuniary nature on the owner or operator." On page 74 that comment states: " . . . the benefit may be prospective rather than immediate. The general rule is that 'payment' has been made to the owner or operator if the transportation is incidental to a relationship between the parties likely to result in a definite, tangible benefit to the operator . . . and if receipt of the benefit is the motivating reason for the transportation."

■ And it is now the established law in Texas that the tangible benefit to the driver or operator need not be the only motivating cause for the furnishing to plaintiff of the transportation. It need be only "a" motivating cause for the furnishing of such transportation. See Fernandez v. Kiesling, 500 S.W.2d 459 (Tex.Sup., 1973).

■ When the evidence above set out is considered in the light of the holdings in the above cases, it is clear to us, and we so hold, that the trial court correctly overruled defendant's motion for an instructed verdict and his motion for judgment notwithstanding the verdict.

The purpose of the trip the parties were on at the time the wreck occurred was to enable Pressley, the defendant driver, to consummate a deal with Horrelleck on the latter's tires. The only reason that both plaintiffs were on the trip was because of Pressley's insistence that their presence would be of benefit to him in helping influence Horrelleck into making a deal on the tires that was favorable to Pressley. This influence would be a tangible benefit to Pressley for it would enable him to make more money out of the transaction. This benefit was unquestionably a motivating influence in Pressley insisting that both of the plaintiffs accompany him to see Horrelleck.

Additional cases that tend to support this holding are Crawford v. Foster, 110 Cal. App. 81, 293 P. 841 (1930); Sullivan v. Richardson, 119 Cal.App. 367, 6 P.2d 567 (1931); Orr & Lanning v. Boockholdt, 10 Ala.App. 331, 65 So. 430 (1913); Lerma v. Flores, 16 Cal.App.2d 128, 60 P.2d 546 (1936); Gregory v. Otts, 329 S.W.2d 904 (Fort Worth, Tex.Civ.App., 1959, ref., n. r. e.); Burnett v. Howell, 294 S.W.2d 410 (El Paso, Tex.Civ.App., 1956, ref., n. r. e.); Johnson v. Smither, 116 S.W.2d 812 (Fort Worth, Tex.Civ.App., 1938, writ dism.); Autry v. Spiering, 407 S.W.2d 826 (Corpus Christi, Tex.Civ.App., 1966 ref., n. r. e.); and Jackson v. Davis, 470 S.W.2d 213 (Houston, Tex.Civ.App. (14th Dist.), 1971, no writ hist.).

Issue No. 3 of the court's charge inquired as to whether Holley was riding as Pressley's guest, and Issue No. 4 inquired whether Sherry Goolsby was riding as Pressley's guest upon the occasion in question. The jury found that neither plaintiff was then riding as Pressley's guest.

In Pressley's Points of Error Nos. 2 and 3 he contends that there was no evidence to support the jury's answers to Issues

Nos. 3 and 4 and, in the alternative, that the evidence is insufficient to support the jury's answers to those two issues, and that such findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

We overrule Pressley's 2nd and 3rd points of error. The evidence which we have above set out that relates to these two issues is sufficient to support the jury's answers thereto. The jury's answers thereto were not against the overwhelming weight and preponderance of the evidence.

■ In Pressley's 4th point of error he contends that the court erred in the definition he gave of the word "guest" in connection with the 3rd and 4th issues of the charge wherein he only told the jury "that the benefit required from the rider to the host to take such rider out of the guest statute should be of a *tangible* nature . . . ." (Emphasis ours.) Pressley's contention was that the instruction was defective in that it omitted to tell the jury that the benefit had to be of a *definite, material* and tangible nature. He contends that because the adjectives "definite and material" were omitted from the instruction in describing the type of benefit necessary to take the plaintiffs out from under the operation of the guest statute that reversible error was thereby committed.

The definition of the word guest as given by the court in both Issues Nos. 3 and 4 of the charge is hereinabove set out in this opinion.

Pressley's 4th point of error is overruled.

We hold that the definition which the trial court used in this case of the word "guest" is correct in so far as the complaint made by Pressley is concerned. The first sentence of the definition used is exactly the same as the one suggested in Texas Pattern Jury Charges (State Bar of Texas), Vol. 1, page 68 (1969). This is obviously where the court got that part of the instruction.

In that work the words "definite and material" are omitted from the suggested definition of guest. They suggest that the definition simply inform the jury that the benefit must be of a *"tangible" nature*.

The American College Dictionary published by Random House in 1969 defines the word "tangible" as meaning: "1. capable of being touched . . . *material* or substantial. 2. real or actual, rather than imaginary or visionary. 3. *definite;* not vague or elusive . . . ." (Emphasis ours.)

Webster's Third New International Dictionary defines "tangible" as meaning, among other things, the following: ". . . real . . . gain in money . . . conceived or thought of as *definable* . . . ." (Emphasis ours.)

It is true that some of the cases, in speaking of the type of benefit that is necessary in order to take the rider from under the operation of the guest statute, say that such benefit must be material and definite. In Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952), it is said that such benefit must be definite and tangible. In Autry v. Spiering, 407 S.W.2d 826 (Corpus Christi, Tex.Civ.App., 1966, writ ref., n. r. e.) it is said that the benefit must be both definite and material.

The trial court here, in his definition of "guest", told the jury that the benefit required must be of a tangible nature. Since one definition of the word tangible is "material" and since another meaning of that word is "definite", the court by instructing them that the benefit must be of a tangible nature did in effect also instruct the jury that such benefit must be material and definite. No error was committed when he refused to use additional adjectives in the definition which meant the same thing that the adjective he had already used meant in advising the jury of the type of benefit he was talking about.

As we have already pointed out above, the second sentence that this trial court

used in his definition of the word "guest" would no longer be a correct instruction in view of the holding in Tisko v. Harrison, 500 S.W.2d 565 (Dallas, Tex.Civ.App., 1973, no writ hist.). That case makes it clear that the benefit involved need only be "a" motivating cause for the furnishing of the transportation instead of "the" motivating cause for furnishing it.

■ We are also convinced that even if this definition of guest as used by the trial court was erroneous in the respects contended for by Pressley, that his 4th point of error still does not present a prejudicial or reversible error under the facts of this particular case.

Here the facts bearing on the guest issue are undisputed. The plaintiffs and the defendant, Pressley, testified to the same set of facts.

The undisputed evidence in the case established the facts on the guest issue to be as follows: the purpose of the trip the parties were on at the time the wreck occurred was to enable Pressley, the defendant driver, to try to consummate a favorable deal with Horrelleck on the latter's tires; the only reason that both plaintiffs were on the trip was because of Pressley's insistence that their presence would be of benefit to him in helping influence Horrelleck into making a deal on the tires that was favorable to Pressley; the plaintiffs making the trip and being present at the meeting would be a tangible benefit to Pressley in that it would enable him to make a more favorable deal with Horrelleck and thus make more money out of the transaction. This benefit was unquestionably a motivating influence in Pressley's insisting that both of the plaintiffs accompany him to see Horrelleck.

The plaintiffs testified that these facts were true. The defendant admitted while testifying that they were true. There was no evidence in the case to the contrary.

A jury's only function in a jury trial of a civil case is to decide the disputed fact issues in the case. 56 Tex.Jur.2d 534, Trial Sec. 192.

Here all of the facts that relate to the guest issues were undisputed. The only question left for determination then, after all of the evidence was in, was whether the two plaintiffs were, under these undisputed facts, riding in Pressley's car as his guests, or whether they were passengers therein, rendering a benefit to Pressley of a tangible nature for their transportation.

Such question, where all the facts relating to the issue are undisputed, is not a fact question. The question presented to the trial court in that situation was a law question.

We hold that since the evidence in this case bearing on the guest issues was undisputed, that no fact question relative to the guest issues was present for the jury to decide.

In the case of Haney v. Takakura, 2 Cal.App.2d 1, 37 P.2d 170, 38 P.2d 160 (1934) the court said at p. 173: "The status of one riding in another's automobile, as to whether he is a guest, or whether he is one riding therein and giving compensation therefor, is a question of law, . . . ."

It is true that this is a California case, but this is bound to be the law in Texas also. See Johnson v. Smither, 116 S.W.2d 812 (Syl. 4) (Fort Worth, Tex.Civ.App., 1938, writ dism.).

Under the undisputed facts in this case as a matter of law the two plaintiffs were not Pressley's guests at the time that he turned over the car they were riding in and injured them. Under the authorities above cited, as a matter of law, they were passengers rendering a tangible benefit to Pressley in payment for the ride.

Since the questions as to whether or not the plaintiffs were guests (being the questions presented by the 3rd and 4th issues) were actually law questions under this record, no harm could have resulted to the

defendant, Pressley, even if the court did err in its definition of guest as is contended for by Pressley.

Affirmed.